**FILED**
**Dec 07, 2018**
**02:52 PM(CT)**
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT JACKSON

| | | |
|---|---|---|
| **JAMIE COTNER,** | ) | **Docket No. 2018-07-0087** |
| Employee, | ) | |
| **v.** | ) | **State File No. 57006 2015** |
| **DOLLAR GENERAL CORP.,** | ) | |
| Employer. | ) | **Judge Amber E. Luttrell** |

## EXPEDITED HEARING ORDER

The Court held an Expedited Hearing on November 9, 2018, on Mr. Cotner's request for additional medical benefits for knee replacement surgery. The legal issue is whether he is likely to establish at a hearing on the merits that his need for surgery arose primarily out of his work injury. For the following reasons, the Court holds he did not present sufficient evidence at this interlocutory stage and denies the requested relief.

### History of Claim

Mr. Cotner worked as a store manager for Dollar General. On July 28, 2017, he rolled a rack down a ramp when the wheel rolled off and the rack flipped off the ramp. Mr. Cotner testified his upper body went off the ramp but his right leg jerked backwards. He experienced pain in the back of his leg but finished his shift. The next day, Mr. Cotner did not work due to leg pain and reported his injury to Dollar General. He sought emergency treatment, and the provider referred him to Dr. Barry Hennessey, an orthopedic specialist.

Mr. Cotner saw Dr. Hennessey twice for knee pain, instability, swelling, and difficulty bearing weight and walking following his injury. Dr. Hennessey diagnosed acute internal derangement of the knee and ordered an MRI. After reviewing the MRI, he diagnosed a torn medial meniscus and recommended arthroscopic surgery. He did not discuss causation in his record. Mr. Cotner did not return to Dr. Hennessey after the surgical recommendation. Instead, he began authorized treatment with Dr. David Johnson.

1

The parties disputed the circumstances leading to Mr. Cotner's treatment with Dr. Johnson. Mr. Cotner testified that after Dr. Hennessey ordered surgery, he requested another opinion on surgery. He asserted that Dollar General never provided a panel. Instead, nurse case manager Nancy Fowler recommended Dr. Johnson and notified Mr. Cotner by email of his appointment. Mr. Cotner denied that Becky Joslin, his claims adjuster, offered him a choice of physicians.

In contrast, Dollar General introduced the affidavits of Ms. Joslin and Rhonda Brode, a nurse case manager, regarding the panel issue. Ms. Joslin stated that Dr. Hennessey originally was not an approved physician; however, Dollar General decided to authorize treatment with him. Ms. Joslin stated after Dr. Hennessey recommended surgery, Mr. Cotner requested permission to treat with another physician. She provided a panel of physicians through Ms. Brode, and he selected Dr. Johnson. Ms. Joslin denied telling Mr. Cotner that he must choose him.

Ms. Brode stated she was the case manager for Mr. Cotner's knee and an unrelated shoulder claim. She also stated that he "was provided with a panel of physicians," and he verbally relayed his panel choice to her on or about September 12, 2017. She denied telling him he must choose Dr. Johnson. Dollar General did not introduce any written panel of physicians offered to Mr. Cotner. For his part, Mr. Cotner denied he spoke to Ms. Brode about his knee.

Mr. Cotner treated with Dr. Johnson and later sought an independent medical evaluation from Dr. Samuel Chung. The parties took the depositions of Drs. Johnson and Chung and introduced the following medical proof.

*Dr. Johnson*

Dr. Johnson testified he first saw Mr. Cotner in September 2017 and that he provided a history of his right knee injury. Dr. Johnson testified he also reported a prior knee injury in high school. In his deposition, he did not independently recall Mr. Cotner telling him about a prior injury but stated he documented it in his record and would not have done so had Mr. Cotner not relayed that history. During his testimony and in later visits with Dr. Johnson, Mr. Cotner denied any prior injury or playing sports in high school.

Dr. Johnson found advanced tricompartmental arthritis on x-rays, which he stated pre-existed the work injury. He reviewed Mr. Cotner's MRI, which indicated severe disease of the medial compartment. He testified the MRI showed structural issues with the knee but only associated joint effusion with an acute injury. He stated the remaining findings were degenerative and/or related to his arthritis. Regarding a macerated meniscus tear, he concluded that it was chronic, and he could not say with any certainty whether it worsened from the work injury.

2

Dr. Johnson diagnosed degenerative arthritis with a history of superimposed knee strain. He stated the following regarding the degenerative changes found on the MRI and x-rays,

> [The degenerative changes] don't show up in a matter of weeks or months. It does take literally years. . . . when an injury occurred, I certainly can't say. But normally, if there is no injury and it's just normal wear and tear, both joints will wear down equally. And when one joint looks perfectly normal and one looks severely arthritic, it's kind of the equivalent of having a tire knocked out of balance[.] . . . Something got knocked out of balance at some point in time, whether it was high school or some subsequent.

He aspirated fluid from Mr. Cotner's knee and gave him a cortisone injection. He concluded the knee condition was too advanced for arthroscopic surgery and recommended a knee replacement.

Dr. Johnson exhausted conservative treatment options in follow-up visits. Later, he again recommended knee replacement surgery after Mr. Cotner's symptoms failed to improve, stating it would be a "definitive fix."

After Dr. Johnson recommended surgery, Ms. Joslin sent a causation letter. In response, Dr. Johnson stated the total knee replacement "was not more than fifty-percent related to Mr. Cotner's knee injury." He further responded that no further treatment was needed for Mr. Cotner's right knee strain/sprain and he was at maximum medical improvement (MMI) for that condition. Dr. Johnson explained his decision to place Mr. Cotner at MMI, stating, "I felt like the ongoing symptoms were predominantly related to the arthritis. And again, that the treatment that I was offering was to treat the arthritis." When asked about the disputed high school injury, Dr. Johnson testified that his causation opinion would not change in the absence of a high school injury.

Additionally, Dr. Johnson testified the fluid in Mr. Cotner's knee could have aggravated the underlying arthritis; however, he could not say whether the macerated tear "had been made any worse." As to other findings, Dr. Johnson testified it was unlikely that the anterior cruciate ligament and macerated medial meniscus would have resulted from the work injury. He stated his symptoms of joint effusion, tenderness, and decreased range of motion are consistent with a knee sprain/strain. Thus, Dr. Johnson concluded Mr. Cotner suffered no significant anatomical change that was primarily related to his work injury.

On cross examination, when asked if the fall at work aggravated Mr. Cotner's condition and caused it to be symptomatic, Dr. Johnson responded, "He reported the symptoms as a result of that injury." However, he stated that Mr. Cotner's need for a

3

knee replacement was inevitable and concluded within a reasonable degree of medical certainty that his MRI findings were not greater than fifty percent related to his work injury.

*Dr. Chung*

Dr. Chung performed an independent medical evaluation. Mr. Cotner reported a consistent history of his knee injury and complained of pain in his calf, quadriceps, and knee pain with weight-bearing. Mr. Cotner denied knee injuries or pain before the work injury, specifically denying any sports injuries in high school.

Dr. Chung reviewed his medical records and MRI report. He believed the meniscus tear found on the MRI was consistent with Mr. Cotner's mechanism of injury. On exam, Dr. Chung noted his right knee was larger than his left knee and found fluid around the patella and joint line pain. He diagnosed "residual from right knee injury with ongoing symptomatology." He did not mention a knee replacement in his record, but testified he agreed with Dr. Johnson that a total knee replacement instead of arthroscopy would fix the knee.

Regarding causation, Dr. Chung stated Mr. Cotner's injury occurred as reported in his history and arose primarily out of and in the course and scope of his employment. He testified as follows:

> The cause [of Mr. Cotner's injury] is that . . . his condition . . . mainly the arthritic findings in his MRI as well as other findings other than the meniscus injury itself, those arthritis arose from the aggravation of the work effects from his workplace and that . . . condition itself . . . primarily arose of the course and scope of his employment at Dollar General Store. But . . . the specific macerated meniscus injury was caused by the specific incident back in 7/28/17 when he had the hyperflex and extension injury.

On cross examination, when asked if Mr. Cotner's macerated meniscus tear was a degenerative finding, Dr. Chung responded that a physician can only know for certain if a tear is degenerative or acute by performing arthroscopic surgery. However, he stated that Mr. Cotner's tear was acute based on his mechanism of injury and his clinical findings. He further concluded that his preexisting arthritis was aggravated by both his overall work duties at Dollar General and the work event. He stated, "[T]he arthritis was there before, premorbidly, but the work that he does and the event that brought on, aggravated that arthritic condition to the clinical findings." Finally, Dr. Chung testified that the need for knee replacement surgery was the arthritis, "as well as really the knee findings I found on the patient when I examined him[.]"

4

*Hearing Testimony*

Mr. Cotner testified he worked up to eighty-hours per week, which caused soreness in his whole body. However, he had no specific problems in his knee or leg or treatment for his knee before this injury. He stated his knee has not improved, and he has not received any further treatment for it since Dr. Johnson. He acknowledged he liked Dr. Johnson and did not complain that he was his only choice during treatment. Mr. Cotner stated he is unable to work in a standing position. He requested the Court order Dollar General to provide total knee replacement surgery.

**Findings of Fact and Conclusions of Law**

At an Expedited Hearing, Mr. Cotner must present sufficient evidence that he is likely to prevail at a hearing on the merits. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

*Analysis*

Mr. Cotner must establish that the injury arose primarily out of and in the course and scope of employment. He must show "to a reasonable degree of medical certainty that [the injury] contributed more than fifty percent (50%) in causing the . . . need for medical treatment, considering all causes." An accidental injury generally does not include an aggravation of a pre-existing condition "unless it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment." The term "reasonable degree of medical certainty" means that "in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." *See generally* Tenn. Code Ann. § 50-6-102(14) (2018). Thus, causation must be established by expert medical testimony.

Mr. Cotner credibly testified about the details of his injury on July 28, 2017, and Dollar General offered no contrary evidence. Thus, he established a specific incident identifiable by time and place. Dollar General authorized treatment for Mr. Cotner with Drs. Hennessey and Johnson and paid temporary disability benefits. The sole issue in dispute is whether he appears likely to prove at a hearing on the merits that the work incident is the primary cause of his need for a total knee replacement. To resolve this dispute, the Court must consider the competing expert opinions.

But first, the Court must address the issue of whether Dr. Johnson's opinion is entitled to a statutory presumption of correctness. *See* Tenn. Code Ann. § 50-6-102(14)(E). Mr. Cotner testified Dollar General never provided him a panel of physicians. He insisted that his nurse case manager recommended Dr. Johnson and scheduled an appointment for him. Ms. Joslin and Ms. Brode stated he was provided a panel, and he selected Dr. Johnson on the phone. However, Dollar General did not

5

introduce a written panel. *See* Tenn. Code Ann. §50-6-204(a)(3)(A)(i) and (3)(D)(i).

The Court finds Mr. Cotner credibly testified that Dollar General directed him to Dr. Johnson, and he was not provided a panel. Dollar General's failure to introduce a panel confirming his alleged choice supports Mr. Cotner's testimony. Thus, the Court holds Dr. Johnson's testimony is not entitled to the presumption of correctness.[1]

A trial court has the discretion to choose which expert to accredit when there is a conflict of expert opinions and no statutory presumption exists. *Brees v. Escape Day Spa & Salon,* 2015 TN Wrk. Comp. App. Bd. LEXIS 5, at *14 (Mar. 12, 2015). In evaluating conflicting expert testimony, a trial court may consider, among other things, "the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information through other experts." *Id.*

Applying the first of these factors, the Court notes that both are experienced physicians. Dr. Johnson is a board-certified orthopedic surgeon; Dr. Chung is a board-certified physiatrist with board certification in independent medical evaluations. While Dr. Chung is not a surgeon, he treated patients with knee injuries in rehabilitation therapy in his practice. The Court finds that both doctors are well qualified, and the differences in their qualifications are not determinative.

The Court turns to the doctors' reasoning and their explanation of their conclusions. Dr. Johnson consistently stated that, with the exception of joint effusion, the remaining MRI findings and x-rays were degenerative and/or related to Mr. Cotner's advanced tricompartmental arthritis. Dr. Johnson pointed to the multiple structural deficiencies, which he stated accompany arthritis. He explained that these findings do not show up in a matter of weeks or months but take "literally years." He only associated the joint effusion with an acute event and stated it was consistent with his diagnosis of a knee strain/sprain. Dr. Johnson concluded there was no significant anatomical change on the MRI *primarily* related to Mr. Cotner's work injury. (Emphasis added.) He testified Mr. Cotner's ongoing symptoms were predominantly related to his arthritis; the treatment he offered was to treat the arthritis.

Regarding surgery, Dr. Johnson stated within a reasonable degree of medical certainty that the total knee replacement was not more than fifty percent related to Mr. Cotner's knee injury. He believed it to be inevitable. In contrast, Dr. Chung concluded that the macerated meniscus tear was an acute finding caused by the work injury. Further, Mr. Cotner's injury, combined with his overall duties at Dollar General, aggravated his

---

[1] He further argued that, even if it had provided him a panel with Drs. Johnson, Shirley and Haltom, as alleged by Ms. Brode, the panel would be invalid because Drs. Johnson and Haltom work in the same practice. The Court agrees.

pre-existing arthritic condition and caused the need for surgery.

The Court notes two troubling aspects of Dr. Chung's opinion. First, he appeared to contradict himself regarding the meniscus tear. In response to questioning as to whether a macerated tear is chronic, he testified there is no way for a physician to know for certain unless he/she performs arthroscopic surgery. Yet, he stated his opinion that the macerated tear was acute based on Mr. Cotner's mechanism of injury and clinical findings. Second, Dr. Chung's testimony that Mr. Cotner's injury and overall work aggravated his pre-existing arthritis, leading to the need for the knee replacement, does not address the current legal standard for causation. The fact that Mr. Cotner's need for surgery is related to the work injury to some unspecified degree is insufficient for the Court to find his work injury contributed more than fifty percent of his need for knee replacement surgery.

Therefore, upon thorough consideration of the medical proof and even without affording Dr. Johnson a presumption of correctness, the Court finds Dr. Johnson's testimony more persuasive. Based on the foregoing, the Court holds Mr. Cotner did not come forward with sufficient proof at this interlocutory stage to show he is likely to succeed at trial in establishing his need for a knee replacement arose primarily out of his work injury. Thus, his request for surgery is denied.

However, the Court notes Dr. Johnson diagnosed an acute knee sprain/strain resulting from the work injury for which Dollar General provided authorized treatment. Therefore, the Court holds Mr. Cotner is likely to prevail in showing he is entitled to causally-related medical treatment for the knee sprain/strain. Because Mr. Cotner established a relationship with Dr. Johnson over the course of treatment and did not request a new panel, the Court holds Dr. Johnson shall continue to be his treating physician for any causally-related medical treatment.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Cotner's request for knee replacement surgery is denied.

2. Dollar General shall continue to provide medical treatment made reasonably necessary by the July 28, 2017 knee sprain/strain under Tennessee Code Annotated section 50-6-204.

3. This matter is set for a telephonic Status Hearing on **Tuesday, January 22, 2019, at 11:00 a.m. Central Time**. The parties must call toll-free 855-543-5039 to participate in the hearing.

**ENTERED December 7, 2018.**

Judge Amber E. Luttrell
Court of Workers' Compensation Claims

## APPENDIX[2]

Exhibits:
1. Wage Statement
2. First Report of Work Injury
3. Rhonda Brode's Affidavit
4. Becky Joslin's Affidavit
5. Dr. Johnson's deposition and attached medical records
6. Professional Rehab Associates records
7. Dr. Chung's deposition

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Order was sent to the following recipients by the following methods of service on this the 7th day of December, 2018.

| Name | Via Email | Service sent to: |
|---|---|---|
| Edward L. Martindale, Jr., Employee's Attorney | X | edwardlmartindale@gmail.com rachalmwallace@gmail.com |
| Connor Sestak, Employer's Attorney | X | csestak@morganakins.com plunny@morganakins.com |

Penny Shrum, Court Clerk
wc.courtclerk@tn.gov

---

[2] The Technical Record for the Expedited Hearing consisted of thirteen documents and is filed in the Clerk's record. For brevity, those documents are not listed.